Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John J. Tharp Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 13 C 02158 | **DATE** | 4/19/2013 |
| **CASE TITLE** | Rosenbach, et al. vs. Maffey, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in the Statement section of this Order, the plaintiffs' amended complaint [6], [7] is dismissed without prejudice. Case terminated.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

### I. Background

Jayme and Cyndi Rosenbach (the "Rosenbachs") filed this action under 42 U.S.C. § 1983 pertaining to a state-court proceeding in which the state took custody of their infant son. They name as defendants Bill Maffey, an investigator with the Illinois Department of Children and Family Services ("IDCFS"), Lutheran Children and Family Services ("Lutheran Services"), Jane Doe, an unidentified IDCFS investigator, Jennifer Lindt, a DuPage County Assistant State's Attorney ("ASA Lindt"), Matthew Guerrero, a DuPage County public defender, and Ronald Sadowski, the attorney appointed to represent the Rosenbachs' son, Jayme D. Rosenbach IV, in the custody hearing. The Rosenbachs allege that the defendants conspired to deprive them of custody of their son by presenting false evidence during the state-court proceeding, leading to the order depriving them of custody of their son and thereby destroying their marriage and family.

In an Order issued on March 29, 2013 ("March 29 Order"), this Court dismissed the Rosenbachs' complaint without prejudice for lack of subject matter jurisdiction. *See* Order, Dkt. 5. In that Order, this Court explained that the Rosenbachs' cause of action was barred by the *Rooker-Feldman* doctrine because their claim was inextricably intertwined with the state-court judgment that caused their alleged injury, and that, the Rosenbachs had a reasonable opportunity to raise their federal claims in the state-court proceedings. *See id.* at 4-5. Further, the Rosenbachs' application to proceed *in forma pauperis* was granted; but because this Court determined that it did not have subject matter jurisdiction over the plaintiffs' claim, their motion for appointment of counsel was denied. The plaintiffs were then granted leave to file amended pleadings to assert a claim not barred by the *Rooker-Feldman* doctrine within 30 days of the March 29 Order. *See id.* at 5.

On April 4, 2013, the plaintiffs filed an amended complaint. Am. Compl., Dkt. 6. The

plaintiffs then filed supplemental pleadings on April 9, 2013. Am. Compl., Dkt. 7. In those amended pleadings, the Rosenbachs further allege that state officials took custody of their son when he was born on February 21, 2012, on the grounds that the child was born addicted to heroin. Am. Compl., Dkt. 6 at 1. The plaintiffs state that their son was not born with heroin in his system, but that he was born "addicted to methadone." *See id.* at 2. According to the Rosenbachs, a doctor had prescribed methadone to Cyndi and did not wean her off the drug during her pregnancy due to health concerns for both Cyndi and the unborn child. *See id.* The plaintiffs contend that, given those health concerns, IDCFS could not have pursued their case for neglect against the plaintiffs on the grounds that their son was born addicted to methadone. Therefore, in order to take custody of the Rosenbachs' child, IDCFS claimed their son was born addicted to heroin. *Id.* To that end, the plaintiffs allege that IDCFS switched the medical records of the Rosenbachs' newborn son, Jayme, with those of the Rosenbachs' firstborn daughter, Isabella, who, the plaintiffs state, had been born exposed to opioids. *See id.* These records were then provided to Lutheran Services to support IDCFS's claim in state court. *See id.*

On April 24, 2012, Jayme Rosenbach received a letter from IDCFS stating that an investigation of child abuse or neglect regarding his son had been "indicated." *See* Compl., Dkt. 1, Ex. 1. According to the letter, a finding of "indicated" meant that "credible evidence of child abuse or neglect ha[d] been found." *Id.* However, the letter also stated that Jayme was "not named as a person responsible for the child abuse or neglect." *Id.* A state-court hearing to determine the Rosenbachs' custody of their son was then held on October 23, 2012. Am. Compl. Dkt. 6 at 1. At this hearing, the Rosenbachs allege that Matthew Guerrero, the public defender appointed to represent Jayme, had a copy of the letter from IDCFS which stated that Jayme was not responsible for the alleged neglect or abuse. *Id.* at 2. Instead of defending Jayme, however, Guerrero conspired with ASA Lindt and agreed with her assertions that the Rosenbachs' son had been born with heroin in his system. *See id.* at 2. Moreover, according to the plaintiffs, Guerrero was aware that Cyndi was in a drug rehabilitation program during the October 23 state-court proceedings, and that IDCFS was liable for the approximate 245 days that the Rosenbachs' son had been taken prior to those proceedings. *See id.* According to the plaintiffs' supplemental filing, Am. Compl., Dkt. 7, although Cyndi was not present at the hearing, she was represented by another, unidentified DuPage County public defender. *Id.* at 1. As a result, the DuPage County court determined that both parents were in neglect and placed the child in foster care. *See* Compl., Dkt. 1 at 4.

## II. Analysis

Pursuant to 28 U.S.C. § 1915, which governs complaints filed in the context of an application to proceed *in forma pauperis,* such as the plaintiffs', this "court shall dismiss [a] case at any time if the court determines that…the action…fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Grinnell Mut. Reinsurance Co. v. Haight,* 697 F.3d 582, 584 (7th Cir. 2012) ("Our first task, as it is in every case, is to determine whether we have subject matter jurisdiction."). To that end, the Court reviews the complaint under the same standard as that for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Vann v. Catholic Bishop of Chi.,* No. 13 C 01058, 2013 WL 1222060, at *1 (N.D. Ill. Mar. 25, 2013) (citing *Allen v. JP Morgan Chase,* No. 10 C 02137, 2010 WL 1325321, at *1 (N.D. Ill. Mar. 30, 2010), citing *Zimmerman v. Tribble,* 226 F.3d 568, 571 (7th Cir. 2000)). As such, the Court will treat all well-pleaded allegations as true and draw all reasonable inferences in the

plaintiffs' favor. *See Mann v. Vogel,* 707 F.3d 872, 877 (7th Cir. 2013). While the plaintiffs need not plead detailed factual allegations, their "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Alam v. Miller Brewing Co.,* 709 F.3d 662, 666 (7th Cir. 2013) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). That is, their "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Council 31 of the Am. Fed'n of State, Cnty. and Municipal Emps., AFL-CIO v. Quinn,* 680 F.3d 875, 884 (7th Cir. 2012) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Twombly,* 550 U.S. at 570).

As the Court explained in its March 29 Order, under the *Rooker-Feldman* doctrine this Court lacks subject matter jurisdiction over claims seeking review of and challenging state-court judgments. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman,* 544 U.S. 280, 284 (2005); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005) (holding that *Rooker-Feldman* is a narrow doctrine, "confined to cases…brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). "The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with the state court determinations." *Kelley v. Med-1 Solutions, LLC,* 548 F.3d 600, 603 (7th Cir. 2008) (citing *Feldman,* 460 U.S. at 482 n.16). That said, plaintiffs may proceed in federal court on independent claims that are distinct from the implicated state-court determination, *id.* (citing *Exxon Mobil,* 544 U.S. at 293), or on claims that the plaintiffs did not have a "reasonable opportunity" to present in state court. *Id.* at 605. But "[i]f the plaintiff could have raised an issue in state court, the claim is barred under *Rooker-Feldman.*" *Brown v. Bowman,* 668 F.3d 437, 442 (7th Cir. 2012).

While the Rosenbachs have pled additional facts concerning the events preceding and during the October 23 state-court hearing in which their son was placed in foster care, the gist of their complaint remains the same—they have been subjected to "court terrorism," *see* Compl., Dkt. 1 at 4, in that the state-court hearing in which their son was placed in foster care was flawed. The Rosenbachs contend both that ASA Lindt and Guerrero conspired during the October 23 state-court hearing to deprive them of custody of their son, and that the judge should have granted Jayme custody of the child, since IDCFS had determined that he was not the person responsible for the alleged abuse or neglect. These allegations are challenges to the state-court judgment. And to the extent that the plaintiffs continue to contest the propriety and outcome of the October 23 state-court hearing, their claim is effectively an appeal of the state-court determination, over which this Court lacks subject matter jurisdiction. *See Homola v. McNamara,* 59 F.3d 647, 650 (7th Cir. 1995) ("A defendant who has lost in state court and sues in federal court does not assert injury at the hands of his adversary; he asserts injury at the hands of the court, and the second suit therefore is an effort to obtain collateral review."). As previously explained, claims that invite district court review and rejection of state-court judgments are barred under *Rooker-Feldman. See Exxon Mobil,* 544 U.S. at 284.

Further, despite their additional factual allegations, the plaintiffs have not shown that they lacked a "reasonable opportunity" to present their claim in state court. For instance, the plaintiffs assert that Cyndi was in a drug rehabilitation program during the state-court proceedings, and therefore did not have a reasonable opportunity to present her claim. In those

same pleadings, however, the plaintiffs concede that Cyndi was appointed and represented by a public defender, and that Jayme was both present and represented by counsel. And while the Rosenbachs contend, again, that Guerrero conspired with ASA Lindt to deprive the plaintiffs of their constitutional rights, the plaintiffs have still failed to point to "some action taken by the state court or state court procedures…[which have] formed the barriers that [the plaintiffs were] incapable of overcoming in order to present [their] claims to the state court," as required under the "reasonable opportunity" exception. *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 560 (7th Cir. 1999).

As the *Kelley* court explained, "the 'reasonable opportunity' exception inquires whether the plaintiff had *any* reasonable opportunity to raise his or her claims, including transferring or appealing the case to a state court that can evaluate the claims." 548 F.3d at 606 (original emphasis). Neither Illinois law, *see, e.g., Long,* 182 F.3d at 560 (plaintiff did not have a reasonable opportunity to raise federal claim during forcible entry and detainer proceedings, because Illinois law only permitted claims germane to the issue of possession during those proceedings), nor some other state-court action or procedure prevented the plaintiffs from raising their claim that evidence had been falsified in state court. *See, e.g., Brokaw v. Weaver,* 305 F.3d 660 (7th Cir. 2002) (plaintiff lacked reasonable opportunity to raise federal claims in state court where parents were prohibited from participating in state-court hearing, and the plaintiff was neither present nor represented at the state-court hearing in which she was directed to remain in foster care). Both plaintiffs were represented by counsel, and Jayme was present at the proceedings. Moreover, the allegation that Guerrero failed to properly defend Jayme, or even conspired with ASA Lindt, is not enough. *See, e.g., Long,* 182 F.3d at 558 ("It is not enough for [the plaintiff] to say that because she was kept away from the Circuit Court…proceeding[s] by the defendants' chicanery, she was denied a reasonable opportunity to raise her claims before the Circuit Court."). And as this Court previously explained in its March 29 Order, while the plaintiffs' allegations against Guerrero may suffice to state a legal malpractice claim (a question as to which the Court takes no view), that is a state law claim that does not implicate the federal Constitution. Accordingly, despite their amended pleadings, the core of the plaintiffs' complaint seeks review of an allegedly flawed state-court proceeding, but that review must take place, in the first instance, in state court. As the *Rooker-Feldman* doctrine holds, a federal district court has no jurisdiction to review a state court judgment. *See, e.g., Homola,* 59 F.3d at 649, 651 (plaintiff's allegations that a municipal attorney "knew or should have known the city had a bad case" against him and that a state judge acted in the absence of jurisdiction when he found the plaintiff in contempt and ordered his arrest, *i.e.,* allegations that his state-court proceedings were flawed, "dismissed for want of jurisdiction").

That said, to the extent that the plaintiffs' complaint may be reasonably construed to allege a separate injury, based not on the October 23 state-court hearing, but on the initial taking of their child by IDCFS officials the day the child was born, the Court must consider whether they have stated a claim independent of the state-court judgment. The Rosenbachs contend that IDCFS knew that Cyndi had been prescribed methadone and could not be weaned off that drug during her pregnancy due to health concerns, and, therefore, did not have grounds to take custody of their son at the hospital. In this respect, the plaintiffs appear to argue that IDCFS seized their son without probable cause. If the Rosenbachs' son was taken by IDCFS without probable cause, that claim could potentially constitute an independent constitutional violation. The problem, however, is that based on the plaintiffs' pleadings, again accepted as true only for

purposes of this review, the DuPage County court reviewed the facts and determined that it was appropriate for IDCFS to take custody of the child. As the plaintiffs contend, IDCFS took temporary custody of their son at the hospital based on the grounds that the child was born addicted or exposed to heroin. If the state court determined there was probable cause to place the Rosenbachs' son in foster care based on the condition of the child at birth, that determination necessarily implies that probable cause existed when IDCFS initially took custody as well. Therefore, like the plaintiffs' previous claims, these allegations are inextricably intertwined with the October 23 state-court judgment. This is so because, while the *Rooker-Feldman* doctrine does not generally apply to determinations made by state administrative agencies, *i.e.* IDCFS, *see, e.g., Van Harken v. City of Chi.,* 103 F.3d 1346, 1348-49 (7th Cir. 1997), "if the decision of a state agency has been upheld by a state court, then the *Rooker-Feldman* doctrine applies, because a challenge to the agency's decision necessarily involves a challenge to the judgment of the state court." *See McGinnis v. Perry Cnty. Court,* No. 11-802-GPM, 2011 WL 4344211, at *1 (S.D. Ill. Sept. 14, 2011) (quoting *Narey v. Dean,* 32 F.3d 1521, 1525 (11th Cir. 1994)). Accepting the plaintiffs' allegations as true, it is clear that the DuPage County court affirmed IDCFS's decision to remove the Rosenbachs' son from their custody. Accordingly, this Court is barred from reviewing IDCFS's decision to take custody of the child at the hospital because it would necessarily involve a review of the state-court judgment which affirmed it—precisely the type of action prohibited under *Rooker-Feldman. See id.* ("Here it is clear from the allegations of the complaint that the decision of DCFS has been affirmed by the [state court], and therefore the *Rooker-Feldman* doctrine bars the Court from reviewing the agency's decision.").[1]

To be clear, this Order does not address the merits of the plaintiffs' claim—indeed, the Court is prohibited from doing so for want of jurisdiction—but only addresses the appropriate forum in which their claim should be pursued. "A state court litigant seeking review of a state court judgment must follow the appellate process through the *state court system* and then directly to the United States Supreme Court." *Kelley,* 548 F.3d at 603 (emphasis added) (citing *GASH Assocs. v. Vill. of Rosemont, Ill.,* 995 F.2d 726, 727 (7th Cir. 1993)). Because the Rosenbachs are, at bottom, seeking review of a state-court determination, their claim belongs in the state court system. *See, e.g., Homola,* 59 F.3d at 651 ("Once a court issues an order, the collateral bar doctrine prevents the loser from migrating to another tribunal in search of a decision he likes better," citation omitted). Further, the Rosenbachs had a reasonable opportunity to raise their claims in state court. *See, e.g., Jensen,* 295 F.3d at 749 ("Plaintiffs could have sought leave to appeal the temporary custody order, Ill. S.Ct. R. 306(a)(5), or moved to modify or vacate the order," citing 705 ILCS 405/2-10(9)). As such, this Court lacks subject matter jurisdiction over the plaintiffs' claim, and, therefore, it is dismissed without prejudice. *Id.* at 748 (explaining that when *Rooker-Feldman* applies, "there is no federal jurisdiction and a dismissal

---

[1] Because the Rosenbachs' complaint centers on the legitimacy of the October 23 custody hearing, the Court believes, as set forth above, that they are challenging—*i.e.*, effectively appealing—the state-court judgment and *Rooker-Feldman* therefore applies. To the extent, however, that the plaintiffs are seeking to relitigate the custody case, *Rooker-Feldman* would not apply. Their claims would still be barred, however, by issue preclusion. See *Jensen v. Foley,* 295 F.3d 745, 748 (7th Cir. 2002) (claim that child protection authorities unlawfully took custody of infant barred by issue preclusion, not *Rooker-Feldman*, where plaintiffs did not challenge legitimacy of the court proceedings and federal claim would require relitigation of the same issue on which the state court judgment was premised).

is not on the merits," citation omitted). Case terminated.

| | Courtroom Deputy Initials: | AIR |
|---|---|---|